# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHERYL THOMAS, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| *versus* § | CIVIL ACTION NO. 3:11-589 |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| *Defendant*. § | |

## REPORT AND RECOMMENDATION

Plaintiff Cheryl Thomas ("Thomas") brings this action under 42 U.S.C. § 405(g), seeking review of a decision denying her application for disability-based benefits under the Social Security Act. Complying with General Order # 18, the parties join issue through competing briefs.[1] Thomas requests judgment reversing and remanding the case for an award of benefits, or, alternatively, further proceedings (Dkt. No. 14); the Commissioner of the Social Security Administration ("Commissioner") requests affirmance. (Dkt. No. 15).

### I. Background

Thomas applied for disability insurance ("DIB") and supplemental security income ("SSI") benefits[2] claiming disability due to: *right ankle problems,*

---

[1] General Order #18 is dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders). (Dkt. No. 3).

[2] Disability Insurance benefits, authorized by Title II of the Social Security Act and funded by social security taxes, provide income to insured individuals forced into involuntary, premature retirement by reason of
(continued...)

*osteoarthritis, degenerative disc disease, dyspnea, obesity, depression, hypothyroidism, and hypertension.* (T. 8, 10-11, 100-109).[3] After being denied benefits initially (T. 45-52), Thomas requested a hearing before an administrative law judge ("ALJ"). (T. 53). The case was assigned to ALJ John P. Ramos ("ALJ Ramos"), who conducted a video evidentiary hearing on October 27, 2010. (T. 8, 16-42).[4] Thomas was represented by counsel, Peter Gorton, Esq. at the hearing.

On, December 2, 2010, ALJ Ramos denied Thomas's applications. (T. 8-15). Thomas appealed to the Appeals Council of the Social Security Administration's Office of Hearings and Appeals. (T. 177-180). The Appeals Council denied Thomas's request to review. (T. 1-4). This rendered ALJ Ramos's opinion the final decision. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Thomas timely instituted this case on May 26, 2011. (Dkt. No. 1).

---

[2](...continued)
disability.
        Supplemental Security Income benefits, authorized by Title XVI of the Social Security Act and funded by general tax revenues, provide an additional resource to assure that disabled individuals' income does not fall below the poverty line.
        Applicants seeking benefits under either statutory provision must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs, *viz.,* "*inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.*" See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3).

[3]    "T." followed by a number refers to the page of the administrative record. (Dkt. No. 8).

[4]    Thomas appeared in Binghamton, New York, and ALJ Ramos presided over the hearing from Syracuse, New York. (T. 8, 16-42).

## II.  Preliminary Discussion

An initial discussion of the administrative decision-making process and nature of judicial review will aid comprehension of Thomas's underlying claim, ALJ Ramos's decision, Thomas's challenges thereto and the undersigned's analysis.

*A.    Sequential Evaluation Procedure*

The law requires *individualized* determinations.  *See Heckler v. Campbell*, 461 U.S. 458, 467 (1983).  Hence, Commissioner Astrue generally must make both medical and vocational assessments in every case.  Given the volume of claims presented on a nationwide basis, this is a huge task.

To accomplish this, the Commissioner utilizes a five-step, administrative sequential evaluation procedure for adjudicating disability-based claims.  *See* 20 C.F.R. §§ 404.1520(a), 416.920.  This evaluation process has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler*, 461 U.S. at 461) (use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations")).

1.    <u>Five Sequential Steps</u>[5]

In this circuit, the Commissioner's five-step sequential procedure is described as follows:

> 1.    The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

---

[5]    The procedure is "sequential" in the sense that when a decision can be made at an early step, remaining steps are not considered.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment [that meets or equals a] listed [impairment] in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir.1998) (citing 20 C.F.R. §§ 404.1520, 416.920)); *see also Britt v. Astrue*, ___F.3d ___, No. 11-2441-cv, 2012 WL 2331645, at *1 (2d Cir. June 20, 2012); *Lazore v. Astrue*, 443 Fed. App'x 650, 652 (2d Cir. 2011); *Kamerling v. Massanari*, 295 F.3d 206, 209 n. 3 (2d Cir. 2002) (citing *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)); *Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir. 1983); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

    2.    <u>Residual Functional Capacity</u>

When formulating Steps 4 and 5 findings, an ALJ must first assess and articulate a claimant's "residual functional capacity" ("RFC"). RFC is an administrative term of art referring to what claimants can still do in a work setting despite their physical and/or mental limitations caused by their impairments and any related symptoms, such as pain. *See* 20 C.F.R.

§§ 404.1545(a), 416.945(a). Administrative law judges thus decide whether applicants, notwithstanding their impairments, have the physical and mental ability to perform activities generally required by competitive, remunerative work on a regular and continuing basis. *See* SSR 96-8p, TITLE II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 61 Fed. Reg. 34474, 1996 WL 374184, at *4 (SSA July 2, 1996).

Determining an individual's RFC obviously is difficult. And, since it often is crucial to a final decision, the Commissioner provides detailed guidance for claims adjudicators in the form of both a regulation and an internal policy ruling. Collectively, these directives (a) identify various ordinary physical functions to be considered in context of an ordinary work schedule, (b) require function-by-function assessments, and (c) dictate that the ultimate RFC determination account for limitations imposed by both severe and non-severe impairments. *See* 20 C.F.R. §§ 404.1545(a)(2), 404.1545(b), 416.945(a)(2), 416.945(b); SSR 96-8p, 1996 WL 374184, at *5, *7.

3. Shifting Burdens

*Claimants* bear the burden to present evidence sufficient to produce favorable findings under the first four steps. *DeChirico*, 134 F.3d at 1179-80. When claimants successfully carry this burden, a *prima facie* case of disability is established. *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). The burden then shifts to the *Commissioner* to show in Step 5 that "there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico*, 134 F.3d at 1180; *Berry*, 675 F.2d at 467; 20 C.F.R. §§ 404.1566, 416.966.

Generally, the Commissioner undertakes to satisfy this burden by eliciting or consulting two principal sources of evidence relevant to whether claimants can perform alternative, available work. First, witnesses qualified as "Vocational Experts" may testify as to whether jobs exist for a person with the claimant's precise abilities. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also* SSR 00-4p, POLICY INTERPRETATION RULING: TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS, 2000 WL 1898704, at *1-2 (SSA Dec. 4, 2000). Second, a United States Department of Labor publication titled *Dictionary of Occupational Titles* ("DOT") can assist in determining when a claimant's residual work skills can be used in other work and the specific occupations in which they can be used.[6] *See* 20 C.F.R. §§ 404.1560(d)(1), 416.966(d)(1); *see also* SSR 00-4p, 2000 WL 1898704, at *1-2. Reviewing courts consistently agree that these evidentiary sources can provide substantial evidence supporting the Commissioner's Step 5 determination. *See Canton v. Astrue*, No. 08–CV–3038 (NGG)(JO), 2010 WL 5391184, at *6 (E.D.N.Y. Dec. 22, 2010) (reliance on *Dictionary of Occupational Titles*); *Fox v. Commissioner of Soc. Sec.*, No. 6:02–CV–1160 (FJS/RFT), 2009 WL 367628, *15 (N.D.N.Y. Feb. 13, 2009) (ALJ may utilize services of a vocational expert).

---

[6] The *Dictionary of Occupational Titles*, published by the United States Department of Labor, is a comprehensive listing of job titles in the United States. Detailed descriptions of requirements for each job include assessments of exertional level and reasoning ability necessary for satisfactory performance of the work. For Social Security proceedings, the Commissioner routinely takes administrative notice of job information contained in DOT when determining whether work exists in significant numbers in the national economy which the claimant can perform at his or her residual functional capacity. *See Townley v. Heckler*, 748 F.2d 109, 113 (2d Cir. 1984); *see also* 20 C.F.R. § 404.1566(d)(1), 404.1566(e), 416.966(d)(1), 416.966(e); *see also* SSR 00-4p, 2000 WL 1898704, at *1-2.

When a claimant's impairments are purely *exertional* in nature, the Commissioner's burden can be met without eliciting vocational expert testimony or equivalent evidence.[7] In that limited circumstance, the Commissioner can take administrative notice of disability *vel non* by consulting "*Medical Vocational Guidelines*," commonly called *"the grids." See Roma v. Astrue*, 468 Fed. App'x 16, 20-21 (2d Cir. 2012); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2. The grids are a matrix of general findings – established by rule – as to whether work exists in the national economy that a person can perform. "The grids take into account a claimant's RFC, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). Ultimately, the grids yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996) (citing 20 C.F.R. § 404.1567(a)).

When only exertional impairments are in play, and an ALJ's findings of residual functional capacity, age, education, and previous work experience coincide with the grids, the Commissioner may directly apply the grids to determine whether work exists in the national economy which claimant can perform. *See Martin v. Astrue,* 337 Fed. App'x 87, 91 (2d Cir. 2009); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2; *see also Thompson v. Barnhart*, 75 Fed. App'x 842, 844 (2d Cir. 2003) (Commissioner can meet Step 5 burden "by resorting to the applicable medical vocational guidelines (the grids)").

---

[7] "An exertional impairment is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet . . . strength demands of jobs (*i.e.*, sitting, standing, walking, lifting, carrying, pushing, and pulling)." *Bogardus-Fry v. Astrue*, No. 7:11-CV-883 (MAD), 2012 WL 3779132, at *15 n. 14 (N.D.N.Y. Aug. 31, 2012) (citing 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *Rodriguez v. Apfel*, No. 96 Civ. 8330(JGK), 1998 WL 150981, at *10, n. 12 (S.D.N.Y. Mar. 31, 1998)).

Claimants often suffer from both exertional and *nonexertional* impairments.[8]  This circumstance precludes direct application of the grids to determine disability.  But, even then, the grids are not a bursting bubble.  They can remain in the case and continue to carry significant evidentiary weight.  The Commissioner's regulation permits administrative law judges to consult the Medical-Vocational Guidelines as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by . . . nonexertional limitations."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2).[9]

Social Security Ruling 85-15 ("SSR 85-15") addresses this "framework" analysis, and directs that when evaluating nonexertional impairments, an administrative law judge should first consult the grids, along with consideration of the claimant's RFC and vocational factors, to determine the extent of impairment caused by *exertional* limitations.  *See* SSR 85-15, THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857, at *3 (SSA 1985).  The administrative judge should next determine how much that claimant's "occupational base," (the entire exertional span from sedentary work through heavy work), is *further reduced* by effects of *nonexertional* impairments.  When a claimant can be expected to make vocational adjustments, and, despite nonexertional impairments, still has a large

---

[8] "Nonexertional limitations" are "limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect[ing] only your ability to meet . . . demands of jobs other than . . . strength demands . . .." *See* 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

[9] *See also* 20 C.F.R. §§ 404.1569a(d),416.969a(d) ("If your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength and demands of jobs other than the strength demands, we will not directly apply the rules in appendix 2 unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rules provide a framework to guide our decision.").

potential occupational base, he or she ordinarily will not be found disabled under a "framework" analysis. *Id*. This erosion-of-occupational-base analysis generally contemplates at least some evidence in addition to the grids. *See Bapp,* 802 F.2d at 606 (if nonexertional limitations significantly diminish a claimant's ability to perform the full range of work, testimony of either a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations is required).

To illustrate, when both exertional and nonexertional impairments are present, an administrative law judge theoretically can find a claimant *disabled* when the grids direct such a finding solely on the basis of severity of exertional impairments. But, when exertional impairments alone direct a grid finding of *not disabled*, an administrative judge next must determine (usually from other evidence) how much nonexertional impairments further diminish that claimant's occupational base. Only when a large occupational base remains can an administrative judge then deny a claim using the grids as a framework.

C.  *Judicial Review of Commissioner's Decision*

Judicial review of the Commissioner's denial of Social Security benefits is limited. The court's abbreviated role is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry*, 675 F.2d at 467; *see also* 42 U.S.C. § 405(g). When proper principles of law were applied, and when the Commissioner's decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

Absent substantial evidence, however, the Commissioner's decision must be reversed. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw*, 221 F.3d at 131). Similarly, with few exceptions, failure to apply correct legal principles will result in reversal.[10] *Bonner v. Astrue,* No. 07–CV–5015 (NGG), 2010 WL 4568875, at *1 (E.D.N.Y. Nov. 3, 2010) (citing *Townley*, 748 F.2d at 112); *Vella v. Astrue*, 634 F. Supp. 2d 410, 416 (S.D.N.Y. 2009), *aff'd*, 394 Fed. App'x 755 (2d Cir. 2010).

### III. The Commissioner's Decision

When evaluating Thomas's claim, ALJ Ramos utilized the sequential evaluation procedure described earlier. Findings favorable to Thomas at the first four steps established a *prima facie* case of disability. At Step 5, however, ALJ Ramos determined, after "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (T. 14). He concluded, therefore, that Thomas "has not been under a disability" and her claim was denied. *Id.*

ALJ Ramos's complete findings and conclusions appear on pages 10 – 14 of the administrative transcript contained in the record before the court. (Dkt. No. 8). For present purposes, it is necessary to specifically spotlight only three:

---

[10]    "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner. *Bonner*, 2010 WL 4568875, at *1(citing *Townley*, 748 F.2d at 112). The highly deferential standard of review regarding sufficiency of evidence is inapplicable to the Commissioner's conclusions of law. *Townley*, 748 F.2d at 112; *accord Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

First, ALJ Ramos found that Thomas is limited to *no exposure to respiratory irritants.* (T. 12). Second, ALJ Ramos declined to make a transferability-of-job-skills finding because *applying the Medical-Vocational Rules directly supports a finding of "not disabled."* (T. 14). Third, ALJ Ramos looked solely to the grids to support his findings that Thomas can perform jobs that exist in significant numbers in the national economy, and, consequently, that she is not disabled.[11] (T. 14).

### IV. Points of Alleged Error

Thomas claims that ALJ Ramos committed several errors listed without discussion in the note below.[12] (Dkt. No. 14, p. 1.). In interests of judicial efficiency and economy, only one point needs analysis for proper disposition of this case. Specifically, Thomas argues that ALJ Ramos made a flawed residual functional capacity determination by failing to elicit testimony of a vocational expert ("VE") to determine erosion of the sedentary job base occasioned by her nonexertional impairment. (Dkt. No. 14, pp. 19-20).

---

[11] Specifically, ALJ Ramos stated: " . . . [A] finding of 'not disabled' is directed by Medical-Vocational Rule 201.28." (T. 14).

[12] Thomas argues the following points of error: (1) ALJ Ramos's finding that her obesity is a "non-severe" impairment is not supported by substantial evidence; (2) ALJ Ramos made an improper credibility assessment of subjective complaints of pain; (3) ALJ Ramos misstated, misunderstood, or distorted the medical evidence as well as one noted daily activity; (4) ALJ Ramos erred in his assessment of a treating doctor's opinion and the consultative examiner's opinion; (5) ALR Ramos erred in not seeking clarification of the opinion of consultative examiner Dr. Justine Magurno, M.D.; and (6) ALJ Ramos made a flawed residual functional capacity determination by failing to elicit testimony of a vocational expert ("VE") to determine the erosion of the sedentary job base by reasons of the nonexertional impairments. (Dkt. No. 14).

## V. Analysis

An imbedded substantial evidence error is conspicuous and susceptible to almost effortless articulation: *Direct application of the grids to determine non-disability in the presence of a significant nonexertional impairment was an error depriving the decision of substantial evidentiary support.*

Thomas's RFC limits her to *no exposure* to respiratory irritants. An environmental limitation is a nonexertional impairment. When a nonexertional impairment significantly diminishes a claimant's ability to work, *i.e*, so that a claimant is unable to perform the full range of a work category, the grids, alone, do not accurately determine disability status because they fail to take into account nonexertional impairments.[13] Thus, an ALJ must introduce other evidence that jobs exist in the national economy that the nonexertionally-impaired claimant can perform. *See Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 603; *see also Heckler*, 461 U.S. at 462 n. 5 ("If an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered."); *Butts v. Barnhart*, 388 F.3d 377, 383–84 (2d Cir. 2004) (if the grid fails "to describe the full extent of [the] claimant's physical limitations," the Commissioner must introduce testimony to prove "that jobs exist in the economy which the claimant can obtain and perform"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir.2005); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).

---

[13] The phrase "significantly diminish" is defined as "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity." *Bapp*, 802 F.2d 605-06; *accord Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010); *Roma*, 468 Fed. App'x at 21.

No such evidence was adduced. Consequently, the decision denying Thomas's applications lacks substantial evidentiary support.

---

The Commissioner's brief offers a weak argument that additional vocational evidence was unnecessary. (Dkt. No. 15, pp. 13-14). The brief cites a snippet of Social Security Ruling 85-15 suggesting that additional evidence may not be needed for a person with a medical restriction to avoid *excessive* amounts of respiratory irritants (fumes, dust, poor ventilation, *etc.*). *See* SSR 85-15, 1985 WL 56857, at *8. This portion of the Ruling posits that most job environments do not involve *great amounts* of such irritants, and, consequently, a limitation to avoid only *excessive amounts* likely would have minimal impact on the broad world of work.[14] The Commissioner's counsel's reliance on this Ruling, however, is disingenuous at best. Thomas is limited to *zero* exposure to respiratory irritants, not *excessive*. (Dkt. No. 16).

Remaining sections of the Ruling, moreover, completely discredit the argument. With regard to environmental restrictions, SSR 85-15 counsels:

> Where an individual can tolerate *very little* noise, dust, etc., the *impact on the ability to work would be considerable* because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.
>
> Where the environmental restriction falls between very little and excessive, *resolution of the issue will generally require consultation of occupational reference materials or the services of a VS.*

---

[14] The Ruling provides, in part, as follows: "Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." *See* SSR 85-15, 1985 WL 56857, at *8.

SSR 85-15, 1985 WL 56857, at *8 (emphasis added). Thomas's nonexertional limitation to avoid *all* environmental irritants is more restrictive than either a "very little" or "between very little and excessive" limitation. Thus, even under the internal policy ruling cited to the court, the Commissioner would require in Thomas's case "consultation of occupational reference materials or the services of a VS." *See id*.

Even were Thomas's nonexertional limitation less restricting, *e.g.*, a prohibition only from "excessive" or "between very little and excessive" environmental irritants, the error here would persist. In the presence of a significant nonexertional impairment, SSR 85-15 requires a two-pronged framework analysis (described earlier in Section II.*B*.) whereby an ALJ first consults the grids to determine whether a claimant is disabled by virtue of exertional impairments alone, and then considers how much the nonexertional impairments further diminish or erode the claimant's occupational base. Generally, this requires additional vocational evidence, but, as SSR 85-15 suggests, additional evidence may not always be required. Either way, the framework analysis cannot be ignored altogether, as happened here. (T. 14). Only when framework *analysis* yields a discrete conclusion that a large occupational base remains notwithstanding nonexertional impairments, can grids alone be used to determine disability *vel non*.

### VI. Recommendations

1.   The Commissioner's decision should be **REVERSED** and the case **REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four, for further reexaminations, including receipt of evidence regarding the extent that Thomas's nonexertional impairment further diminishes her occupational base.

2. To guard against necessity for further actions seeking judicial review, the court also should request the Commissioner to reconsider his decision in light of *all* errors asserted in this action (*see* n. 12, *supra*).

## VII.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___11___ day of ___September___ 2012.

Earl S. Hines
United States Magistrate Judge